NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-3065
_____

VAHAN KELERCHIAN,
                                    Appellant

v.

BUREAU OF ALCOHOL TOBACCO FIREARMS & EXPLOSIVES,
AN AGENCY OF THE DEPARTMENT OF JUSTICE; REGINA LOMBARDO,
ACTING DIRECTOR BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND
EXPLOSIVES; ATTORNEY GENERAL OF THE UNITED STATES;
UNITED STATES OF AMERICA
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 2:20-cv-00253
District Judge: The Hon. Wendy Beetlestone
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 21, 2021

Before: SMITH, *Chief Judge*, MATEY, and FISHER, *Circuit Judges*

(Filed: July 12, 2021)
_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

SMITH, *Chief Judge*.

Appellant Vahan Kelerchian appeals from the District Court's orders dismissing his complaint, with prejudice, for lack of subject matter jurisdiction and denying his motion for reconsideration or leave to amend. For the reasons that follow, we will affirm in part and vacate in part.

## I. FACTS AND PROCEDURAL HISTORY

Kelerchian is a firearms dealer who obtained a federal firearms license around January 2006. In May 2013, Kelerchian was indicted in the Northern District of Indiana for conspiracy to violate a recordkeeping requirement of the Gun Control Act, 18 U.S.C. § 924(a)(1)(A), and other federal laws. In October 2015, a jury found Kelerchian guilty on all counts in the indictment except for a bribery charge. In February 2018, Kelerchian was sentenced to a term of imprisonment of 100 months. Kelerchian's appeal to the Seventh Circuit was unsuccessful. *United States v. Kelerchian*, 937 F.3d 895, 919 (7th Cir. 2019). On June 1, 2020, the Supreme Court denied his petition for writ of certiorari. 140 S. Ct. 2825.

On March 2, 2018—within 30 days of his sentencing—Kelerchian mailed an "Application for Restoration of Firearms Privileges"[1] to the Bureau of Alcohol, Tobacco,

_____

[1] Kelerchian used ATF Form 3210.1 (OMB No. 1140-0002) as revised in September 2014. After Kelerchian filed suit, ATF began to describe this form as requesting information from businesses and not individuals. *Compare* 85 Fed. Reg. 28664, 28665 (May 13, 2020), *with,*

Firearms and Explosives (ATF). On March 27, 2018, ATF returned the application to Kelerchian with the explanation that, because of an appropriations ban enacted by Congress every year since 1992, "ATF cannot act upon applications for relief" and that "Mr. Kelerchian's application is being returned unprocessed." App'x Vol. II at 72. On April 9, 2018, Kelerchian re-sent his application to ATF with a letter explaining his view that ATF was "required to retain the application and process it, when, if ever, the Congress appropriates money." App'x Vol. II at 124. ATF did not return the application again or send any other correspondence regarding the application.

On January 13, 2020—after Kelerchian re-sent his application and before the Supreme Court denied certiorari in his criminal case—Kelerchian filed his complaint against ATF in the District Court. The theory of the complaint is that Kelerchian is entitled to keep dealing firearms under his license despite his felony conviction because 18 U.S.C. § 925 provides that "[a] licensed dealer, . . . conducting operations under this chapter, who makes application for relief from the disabilities incurred under this chapter, shall not be barred by such disability from further operations under his license pending final action on an application for relief filed pursuant to this section." The complaint alleges that ATF has an "internal policy" inconsistent with § 925(c). App'x Vol. II at 9 (Compl. ¶ 40). In

_e.g._, 79 Fed. Reg. 34358 (June 16, 2014). Curiously, the form still requests information applicable only to individuals. _See_ App'x Vol. II at 23 (e.g., "Sex," "Weight," "Employment Record").

Kelerchian's words, this "internal policy" dictates that

> [E]ven if a [federal firearms] licensee timely complies with 18 U.S.C. § 925(c) and 27 C.F.R. [§] 478.144 by making and filing the application for relief with ATF, since ATF cannot adjudicate the application, ATF can immediately revoke the license upon a final determination on the criminal charges and contend that the firearms held pursuant to the license are contraband and therefore subject to forfeiture, in addition to arguably contending that the licensee is a prohibited person in possession of each and every firearm, for which he/she could be separately charged and convicted.

*Id.* at 10 (Compl. ¶ 48).

Kelerchian's complaint sets forth three counts contesting ATF's alleged "internal policy." Count I is for "declaratory and injunctive relief pursuant to 18 U.S.C. § 925(c) and 27 C.F.R. § 478.11(i)." *Id.* at 10–11 (Compl. ¶¶ 43–49). Count II—titled "Violation of ATF's Rulemaking Authority"—does not name any statute and appears to suggest that ATF has somehow violated the *Chevron* doctrine. *Id.* at 11 (¶¶ 50–53) (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984); alleging that ATF has "attempt[ed] to contravene the Congress' mandate [] in violation of its regulatory authority"). Count III is for "Administrative Procedure Act Violations" and alleges, *inter alia*, that ATF has not made the "internal policy" available to the public in violation of 5 U.S.C. § 552 and that ATF's "internal policy" is an "agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" as prohibited by 5 U.S.C. § 706(2)(A). *Id.* at 11–14 (¶¶ 54–66). Kelerchian seeks an injunction prohibiting ATF from enforcing the "internal policy" and a declaration that the

"internal policy" violates "18 U.S.C. § 925(c), 27 C.F.R. § 478.144, [ATF's] statutory authority, and the Administrative Procedures Act [(APA)]." *Id.* at 14.

The District Court, on July 17, 2020, granted ATF's motion to dismiss for lack of subject matter jurisdiction and denied as moot ATF's motion to dismiss for failure to state a claim. The District Court dismissed Kelerchian's complaint with prejudice, reasoning that "[b]ecause the relief Plaintiff seeks is impossible, amendment would be futile." App'x Vol. I at 12 (citing *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)). Kelerchian then moved for reconsideration and, in the alternative, for leave to amend his complaint. The Court denied the motion.

Kelerchian appeals the District Court's orders granting ATF's motion to dismiss and denying Kelerchian's motion for reconsideration or leave to amend.

## II. SUBJECT MATTER JURISDICTION[2]

Kelerchian asserts subject matter jurisdiction under the federal question statute, 28 U.S.C. § 1331. ATF insists that the District Court lacked subject matter jurisdiction by virtue of the annual appropriations ban, which provides that "none of the funds appropriated [to ATF] shall be available to investigate or act upon applications for relief from Federal firearms disabilities under section 925(c) of title 18, United States Code."

---

[2] We have jurisdiction to review the final orders of the District Court under 18 U.S.C. § 1291. We review *de novo* whether a district court had subject matter jurisdiction. *See, e.g.*, *In re Phar-Mor, Inc. Sec. Litig.*, 172 F.3d 270, 273 (3d Cir. 1999).

*E.g.*, Consolidated Appropriations Act, 2018, Division B, tit. 2, Pub. L. 115-141, 132 Stat. 348, 415. ATF advances three variations of this argument, none of which is persuasive.

*First*, ATF contends that subject matter jurisdiction is foreclosed by *United States v. Bean*, 537 U.S. 71 (2002), and *Pontarelli v. Department of Treasury*, 285 F.3d 216 (3d Cir. 2002) (en banc). But *Bean* and *Pontarelli* do not hold that district courts lack jurisdiction to decide any dispute involving § 925(c). *Bean* and *Pontarelli* stand for a very limited proposition: "Inaction by ATF does not amount to a 'denial' within the meaning of § 925(c)," even when that inaction is mandated by the appropriations ban. *Bean*, 537 U.S. at 75; *see also Pontarelli*, 285 F.3d at 225. To the extent that *Bean* or *Pontarelli* described an ATF denial as a subject matter jurisdiction requirement, it was as a requirement before a district court could "review a felon's application for restoration" in the manner provided by § 925(c). *Pontarelli*, 285 F.3d at 224; *see also Bean*, 557 U.S. at 76. Thus the holdings of *Bean* and *Pontarelli* are limited to cases where a district court is asked to review an application and decide whether an applicant is "likely to act in a manner dangerous to public safety," § 925(c), without the benefit of a prior ATF decision. Here, by contrast, Kelerchian does not ask the District Court to decide the merits of his § 925(c) application.

*Second*, ATF argues that even if Kelerchian is not seeking a decision on his § 925(c) application, "the relief he seeks is the same – a declaration that he is relieved of his federal firearms disabilities pursuant to § 925(c)." ATF Br. 24. This is incorrect. If ATF or a

district court were to grant Kelerchian's § 925(c) application, he would obtain "relief from federal firearms disabilities."  But Kelerchian seeks something less than relief from federal firearms disabilities.  Kelerchian seeks the "protection" of § 925(c), which provides that a licensee "shall not be barred by such disability from further operations under his license" if the licensee has filed an application for relief and final action on that application is pending.[3]   Kelerchian Br. 11.

There are several reasons why a licensee not being barred by disabilities under the protection provision is different from a licensee obtaining "relief from federal firearms disabilities."  A licensed firearms dealer who is afforded § 925(c) protection would merely be permitted to continue licensed operations under his dealer license.  He would not necessarily be entitled, for example, to obtain a license as a firearms importer or manufacturer, *see* 18 U.S.C. § 923(d)(1)(B), whereas a licensee who obtained complete relief from his disabilities could be so entitled.  Also, the "protection" provision of § 925(c) is not the only provision which allows a licensee to continue licensed operations despite a disability.  Section 925(b) allows a licensee who is under felony indictment—*i.e.*, incurs a disability under § 922(n)—to "continue operation pursuant to his existing license . . . until any conviction pursuant to the indictment becomes final."  § 925(b).  If allowing a licensee

---

[3] We neither endorse nor discredit Kelerchian's characterizations that he has filed an application for relief and that final action on his application is pending.

with a disability to continue licensed operations is the same as "relief from firearm disabilities," then ATF in fact afforded Kelerchian "relief from firearms disabilities" by allowing him to continue licensed operations from his indictment in May 2013 until his conviction became final on June 1, 2020.[4] *See* ATF Br. 4, 15. Yet ATF takes the position here that a district court lacks subject matter jurisdiction to enter any declaration as to the effect of § 925(c) that would entitle a licensee to continue licensed operations. We see no basis—in the Gun Control Act, the appropriations ban, or *Bean*—for treating the effect of § 925(b) differently from the effect of the protection provision of § 925(c). So ATF's second argument also fails.

*Third*, ATF argues that a district court is without jurisdiction to compel an agency to act contrary to congressional appropriations and that "[a] court order requiring ATF to give full legal effect to [an] application under § 925(c)" under the protection provision "would require the very action Congress outlawed" through the appropriations ban. ATF Opposition to Kelerchian Motion for Reconsideration at 3, Dist. Ct. ECF No. 17. But Kelerchian does not seek an order directing ATF to act in contravention of the

---

[4] ATF goes even further and takes the position that Kelerchian was entitled to continue operating under his license for 30 days after his conviction became final—*i.e.*, July 1—by operation of 27 C.F.R. § 478.144(i). The evident purpose of the 30-day period in § 478.144(i), however, is to allow a licensee to "file[] the application for relief" from disabilities under § 925(c). If the appropriations ban renders § 925(c), including its protection provision, a complete nullity, *see* ATF Br. 7, then it is unclear why the 30-day grace period in § 478.144(i) is not also a nullity.

appropriations ban.  The appropriations ban only prohibits ATF from "investigat[ing] or act[ing] upon applications for relief."  ATF provides no support for a reading of "investigate or act upon" that includes the mere recognition of the fact that an application for relief has been filed or the legal effect of such a filing.[5]  The most "obvious" interpretation of "act upon" in the appropriations ban is that it means that ATF "may neither grant nor deny applications." *McHugh v. Rubin*, 220 F.3d 53, 58 (2d Cir. 2000).  Because Kelerchian's requested relief does not require ATF to grant or deny his application, the appropriations ban did not deprive the District Court of subject matter jurisdiction.

## III. FAILURE TO STATE A CLAIM

Although the District Court should not have dismissed Kelerchian's complaint for lack of subject matter jurisdiction, it should have dismissed Kelerchian's complaint for failure to state a claim.  28 U.S.C. § 1331 provides district courts subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  But § 1331 does not provide a cause of action for all alleged violations of a federal right or immunity.  Count II of the complaint alleges that Kelerchian has a federal right under § 925(c) but does not identify a cause of action.  So it fails to state a claim.  Count I of the complaint names § 925(c) and its implementing regulation as a cause of action.  But

---

[5] ATF's practice of mailing back individuals' applications as unprocessed arguably requires ATF to recognize that an individual has filed an application for relief.

-9-

§ 925(c) does not contain an express right of action to enforce the protection provision and we do not read the statute to imply a private right of action. *See generally Alexander v. Sandoval*, 532 U.S. 275 (2001). So Count I also fails to state a claim.

Which leaves us with Count III. "'The judicial review provisions of the APA,' on the other hand, 'provide a limited cause of action for parties adversely affected by agency action.'" *Chehazeh v. Att'y Gen*, 666 F.3d 118, 126 n.11 (3d Cir. 2012) (quoting *Oryszak v. Sullivan*, 576 F.3d 522, 525 (D.C. Cir. 2009)). Yet to state a claim under the APA, the challenged agency action must be a "final agency action." *Id.* (citing 5 U.S.C. § 704). Nowhere does Kelerchian allege that the "internal policy" is a "final agency action." The most Kelerchian alleges is that the "internal policy" was communicated to Kelerchian's counsel by ATF Philadelphia Division Counsel Kevin White in a phone call. App'x Vol. II at 9 (Compl. ¶ 40). This allegation is insufficient to establish that the "internal policy" is a final agency action under the relevant legal standard. *See generally Bennett v. Spear*, 520 U.S. 154, 177–78 (1997); *CEC Energy Co., Inc. v. Public Service Comm'n of V.I.*, 891 F.2d 1107, 1110 (3d Cir. 1989). So Count III also fails to state a claim and ATF's motion to dismiss should have been granted.

## IV. DISPOSITION

The District Court improperly dismissed Kelerchian's complaint with prejudice because the Court determined that no amendment to his complaint would allow the Court

to exercise subject matter jurisdiction. The Court did not consider whether amendment would be futile on the grounds that Kelerchian could never state a claim. Because this is the first time Kelerchian has learned that his complaint fails to state a claim, we also will not address whether amendment would be futile. It is true that Kelerchian has not explained in the District Court or on appeal how he would amend his complaint to state a claim. But we will not fault him for failing to predict which aspects of his claims would be deemed defective or insufficient.

We will affirm the July 17 order of the District Court insofar as it dismissed the complaint, but we do so on grounds different from those relied on by that court. We will vacate the part of the order dismissing the complaint with prejudice. Because dismissal is without prejudice, we will vacate as moot the order denying the motion for reconsideration or leave to amend.